UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL NOWLING and JANICE NOWLING, | Case No. 19-CV-1605 (PJS/TNL) |
| Plaintiffs, | |
| v. | ORDER |
| SN SERVICING CORPORATION and U.S. BANK TRUST NATIONAL ASSOCIATION, as Trustee of the Igloo Series II Trust, | |
| Defendants. | |

Christopher Wilcox and Daniel M. Eaton, CHRISTENSEN LAW OFFICE PLLC, for plaintiffs.

Calvin P. Hoffman and James Schoeberl, STINSON LLP, for defendants.

Plaintiffs Michael and Janice Nowling (collectively, the "Nowlings") have a home-mortgage loan with defendant U.S. Bank Trust National Association, as Trustee of the Igloo Series II Trust ("U.S. Bank"). The loan is serviced by defendant SN Servicing Corporation ("SN Servicing"). In December 2017, the Nowlings began sending a series of letters to SN Servicing requesting information about their loan and disputing their remaining balance. After receiving what they regarded as an unsatisfactory response, the Nowlings filed this lawsuit, asserting claims under the Real Estate Settlement Procedures Act ("RESPA") and Minnesota's Mortgage Originator and Servicer Licensing Act ("MOSLA"), as well as a claim for breach of contract.

On the date that they filed this lawsuit, the Nowlings were debtors in ongoing Chapter 13 bankruptcy proceedings. The Nowlings failed to disclose their claims against defendants to the bankruptcy court in those proceedings, as they were required to do. Defendants now move to dismiss the Nowlings' claims, arguing that the Nowlings are judicially estopped from pursuing their claims because of their failure to disclose their claims to the bankruptcy court. The Court disagrees and denies defendants' motion to dismiss.

## I. BACKGROUND

In 2002, the Nowlings borrowed $155,600 to purchase a home and secured the loan with a mortgage. ECF No. 18 ¶ 20; ECF No. 27 at 2. The Nowlings refinanced four times between 2008 and 2013, increasing the principal each time. ECF No. 28-1 at 30-38, 49-76. In 2014, the Nowlings filed for Chapter 13 bankruptcy. ECF No. 18 ¶ 23; ECF No. 28-1 at 78-124.

Among the schedules that bankruptcy debtors are required to file is an itemized list of the debtors' personal property, known as "Schedule B." Schedule B requires debtors to disclose various categories of assets, including any "contingent and unliquidated claims." ECF No. 28-1 at 88. On their Schedule B, the Nowlings listed claims for unpaid wages and for unpaid Social Security and unemployment benefits. *Id*.

A couple of years after filing for bankruptcy—and while their bankruptcy proceedings were still pending—the Nowlings began sending a series of letters to SN Servicing. In those letters, the Nowlings requested information about their loan and disputed the amount that they owed. The first letter was sent by the Nowlings' former counsel on their behalf on December 8, 2017. ECF No. 18-1 at 1. That letter was characterized as a "qualified written request" ("QWR"). *Id.* Under RESPA, when a mortgage servicer receives a QWR, the servicer is required to respond within 30 days by: (1) correcting the borrower's account; (2) conducting an investigation and providing an explanation of why the servicer believes the account is correct; or (3) conducting an investigation and providing either the information requested or an explanation of why the information is unavailable. *See* 12 U.S.C. § 2605(e)(2). The December 8 letter promised "aggressive enforcement" of the Nowlings' rights if SN Servicing should fail to respond to the QWR in an adequate and timely manner. ECF No. 18-1 at 1.

On January 10, 2018, SN Servicing responded with some, but not all, of the requested information. *Id.* at 3. The Nowlings proceeded to send four additional letters asserting that the reported principal amount was incorrect and demanding information about the loan agreement and payment history. *Id.* at 4-5, 7, 9. SN Servicing responded to three of the letters, but each of the responses was deemed inadequate by the Nowlings. *Id.* at 6, 8, 11.

On May 13, 2019, the bankruptcy court entered an order discharging the Nowlings' unsecured debt on the basis of the schedules they had filed. ECF No. 28-1 at 144. As noted, those schedules did not disclose any claim against U.S. Bank or SN Servicing. *Id.* at 88. On June 18, 2019—after the discharge, but while the bankruptcy proceedings were still pending—the Nowlings filed this lawsuit, alleging that SN Servicing violated RESPA and MOSLA when it failed to provide adequate and timely responses to their letters. ECF No. 1. The Nowlings also brought a breach-of-contract claim, alleging that U.S. Bank and SN Servicing violated the loan agreement by incorrectly applying payments, by charging improper fees and interest rates, and by claiming an incorrect outstanding balance. *Id.* at 27; ECF No. 18 at 30. Again, however, the Nowlings did not notify the bankruptcy court of their claims.

On July 25, 2019, defendants moved to dismiss the Nowlings' claims, arguing that those claims were barred by the doctrine of judicial estoppel because the claims had never been disclosed by the Nowlings in their pending Chapter 13 proceedings.[1] ECF No. 13. Later that same day, the Nowlings' bankruptcy counsel amended their Schedule B to include their RESPA claim. ECF No. 18-1 at 12-27. The trustee took no

---

[1]It was unclear from defendants' briefing whether they were also arguing that the bankruptcy court's acceptance of SN Servicing's proof of claim (which reported the principal balance of the mortgage as $189,291.08) provided an independent basis for applying judicial estoppel. *See* ECF No. 28-1 at 137. At oral argument, however, defense counsel clarified that defendants' judicial-estoppel argument is based solely on the Nowlings' failure to disclose their claims to the bankruptcy court.

action in response to the disclosure. ECF No. 18 ¶ 81. On August 12, 2019, the bankruptcy proceedings closed. *Id.* ¶ 82.

A week later, the Nowlings filed an amended complaint in this action, again asserting RESPA, MOSLA, and contract claims against defendants. ECF No. 18. Defendants now move to dismiss the amended complaint, arguing that the Nowlings' belated amendment of their Schedule B did not cure the original omission, and that judicial estoppel should still apply to bar the Nowlings from raising their claims. ECF No. 27.

## II. ANALYSIS

### A. Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), an amended complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations in the amended complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Id.* at 555. In addition to the facts alleged in the amended complaint, the Court may consider matters of public record and matters necessarily embraced by the amended complaint. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). In assessing the sufficiency of the amended complaint, the Court need not consider legal conclusions that are couched as factual allegations. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678-79 (2009). The Court must, however, accept as true all factual allegations in the amended complaint and draw all reasonable inferences in favor of the non-moving party. *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).

### B. Judicial Estoppel

In *New Hampshire v. Maine*, the Supreme Court described judicial estoppel as "an equitable doctrine invoked by a court at its discretion." 532 U.S. 742, 750 (2001). A court may apply judicial estoppel to "prevent[] a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Id.* at 749. The doctrine is intended to protect the integrity of the judicial system by preventing litigants from "deliberately changing positions according to the exigencies of the moment." *Id* at 750.

While acknowledging that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," the Supreme Court in *New Hampshire* identified three factors that "typically inform the decision whether to apply the doctrine in a particular case." *Id*. "First, a party's later position must be clearly inconsistent with its earlier position." *Id*. Second, a party's earlier position must have been accepted by a court, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id*. Third, courts must consider

"whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751.

The Supreme Court cautioned that its three-factor test was not meant to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *Id.* The Court explicitly acknowledged that "[a]dditional considerations may inform the doctrine's application in specific factual contexts," *id.*, and noted that judicial estoppel may not be warranted when the prior inconsistent statement was the result of inadvertence or mistake, *id.* at 753.

The *New Hampshire* framework has regularly been applied in cases in which a plaintiff seeks to assert claims that arose prior to or during the pendency of bankruptcy proceedings but were not disclosed to the bankruptcy court. In *Van Horn v. Martin*, 812 F.3d 1180 (8th Cir. 2016), for example, the Eighth Circuit upheld the lower court's application of judicial estoppel to bar the plaintiff (Van Horn) from asserting employment-discrimination claims. Van Horn had filed two charges with the Equal Employment Opportunity Commission ("EEOC") while she was a debtor in Chapter 13 bankruptcy proceedings, but she had not listed her potential claims on her bankruptcy schedules. *Id.* at 1182. The Eighth Circuit deemed Van Horn's omission to be an implicit representation to the bankruptcy court that her claims did not exist. *Id.* at 1183.

Van Horn's later assertion of those claims in district court was therefore inconsistent with her prior position, and the court concluded that the first *New Hampshire* factor was met. *Id.*

The Eighth Circuit found that the second *New Hampshire* factor was also met because the bankruptcy court's discharge of Van Horn's unsecured debts based on her incomplete schedules constituted judicial acceptance of her prior (implicit) representation that the claims did not exist. *Id.* And finally, the third *New Hampshire* factor was met because, by waiting until after her debts had been discharged to file suit against her former employer, Van Horn could have received an unfair advantage. *Id.* If she had disclosed the potential claims, the bankruptcy trustee "could have asked the bankruptcy court to order her to make any proceeds from a potential settlement available to her unsecured creditors." *Id.* After concluding that Van Horn's failure to disclose was not due to inadvertence or mistake, the Eighth Circuit affirmed the district court's dismissal of her claims. *Id.; see also Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030 (8th Cir. 2016) (judicial estoppel barred employment-discrimination claim where plaintiff received right-to-sue letter during pendency of bankruptcy proceedings, but failed to list the claim as an asset on his bankruptcy schedules); *Cover v. J.C. Penny Corp.*, 187 F. Supp. 3d 1079 (D. Minn. 2016) (judicial estoppel barred employment-discrimination claim where plaintiff filed a charge with the EEOC while her bankruptcy

proceedings were ongoing, but did not list the pending charge on her bankruptcy schedules).

1. *New Hampshire* Factors

In this case, all three of the *New Hampshire* factors—as interpreted by the Eighth Circuit in *Van Horn* and similar cases—counsel in favor of applying judicial estoppel:

*First*, the Nowlings did not identify their claims against U.S. Bank and SN Servicing in their bankruptcy schedules. ECF No. 28-1 at 88. The Nowlings thereby made an implicit representation to the bankruptcy court that those claims did not exist.[2] *See Van Horn*, 812 F.3d at 1183. Before this Court, the Nowlings now take the "clearly inconsistent" position that their claims do exist. The first *New Hampshire* factor is met.

*Second*, the bankruptcy court accepted the Nowlings' representation that their claims did not exist when it discharged their unsecured debt. *See id.*; *Jones*, 811 F.3d

---

[2]The facts giving rise to the Nowlings' claims occurred during the pendency of the bankruptcy case, and as Chapter 13 debtors, the Nowlings had a duty to disclose all claims acquired both before and during their bankruptcy case, including *potential* claims. *See Jones*, 811 F.3d at 1033 ("[A] Chapter 13 debtor who does not amend his bankruptcy schedules to reflect a post petition cause of action adopts inconsistent positions in the bankruptcy court and the court where that cause of action is pending."); *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 677-79 (8th Cir. 2012) (failure to disclose potential involvement in class action lawsuit filed nearly two years after debtor filed for Chapter 13 bankruptcy was an inconsistent representation for purposes of the first *New Hampshire* factor); *see also Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015) ("[T]he Chapter 13 estate from which creditors may be paid includes both the debtor's property at the time of his bankruptcy petition, and any wages and property acquired after filing." (citing 11 U.S.C. § 1306(a))).

at 1033-34. The fact that the Nowlings amended their bankruptcy schedules *after* their unsecured debt was discharged does not alter the analysis because "the court's original discharge of the debt is sufficient acceptance of the debtor's position to provide a basis for judicial estoppel." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1048 (8th Cir. 2006). The second *New Hampshire* factor is also met.

*Third*, allowing the Nowlings to pursue their undisclosed claims in this action could allow them to "derive an unfair advantage or impose an unfair detriment on the opposing party." *New Hampshire*, 532 U.S. at 751. Failing to estop the Nowlings would not impose an unfair advantage on U.S. Bank or SN Servicing. U.S. Bank was a *secured* creditor, and thus the bankruptcy court's discharge of the Nowlings' *unsecured* debt had no impact on it. ECF No. 28-1 at 144-47. SN Servicing, as an agent of U.S. Bank, was similarly unharmed. But failing to estop the Nowlings could nevertheless allow them to derive an unfair advantage.

The Eighth Circuit has made clear that the third *New Hampshire* factor is met if the Nowlings *could* have benefitted from their failure to timely disclose their claims to the bankruptcy court; defendants need not show that the Nowlings *in fact* benefitted.[3]

---

[3]*See Jones*, 811 F.3d at 1034 ("'Judicial estoppel does not require that the nondisclosure must lead to a different result in the bankruptcy proceeding' . . . and may apply based on a litigant's intent to mislead the court." (quoting *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275 (11th Cir. 2010))); *see also Van Horn*, 812 F.3d at 1183 (plaintiff "could have received an unfair advantage because her trustee could have asked the
(continued...)

Without question, the Nowlings *could* have benefitted from their nondisclosure. If the Nowlings had listed their claims against U.S. Bank and SN Servicing as contingent and unliquidated claims on their Schedule B, the bankruptcy trustee could have asked the bankruptcy court to order the Nowlings to make any proceeds from the claims available to their unsecured creditors. *See Van Horn*, 812 F.3d at 1183.

In sum, all three of the *New Hampshire* factors are met, which counsels in favor of applying judicial estoppel to bar the Nowlings' claims. But that is not the end of the analysis.

2. Inadvertence or Mistake

It is important in this case—as in all cases involving requests for equitable relief—not to lose sight of the forest for the trees. "[J]udicial estoppel is not a mechanical rule." *Clark v. All Acquisition, LLC*, 886 F.3d 261, 266 (2d Cir. 2018) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Equity eschews mechanical rules.")). It is "axiomatic that judicial estoppel—an equitable doctrine—is to be construed in light of equitable principles." *Id*.

Both the Supreme Court and the Eighth Circuit have cautioned that, even when the *New Hampshire* test is satisfied (as in this case), judicial estoppel is nevertheless

---

[3](...continued)
bankruptcy court to order her to make any proceeds from a potential settlement available to her unsecured creditors").

unwarranted when a party's inconsistent positions are attributable to inadvertence or mistake. *New Hampshire*, 532 U.S. at 753; *Stallings*, 447 F.3d at 1049. The three *New Hampshire* factors will be present in virtually every case in which a debtor fails to disclose a claim to a bankruptcy court and later seeks to pursue that claim. Yet the Eighth Circuit has cautioned that the "requisite intent for judicial estoppel" cannot "be inferred from the mere fact of nondisclosure in a bankruptcy proceeding," as such a practice "would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies." *Stallings*, 447 F.3d at 1049.

The question, then, is whether the Nowlings' failure to disclose their claims to the bankruptcy court was inadvertent. In this context, the Eighth Circuit has adopted a narrow view of what constitutes inadvertence: "'A debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.'"[4]

---

[4]Courts in other jurisdictions take a different approach, looking to a wide variety of factors to determine whether a plaintiff subjectively intended to conceal claims from the bankruptcy court. *Cf. Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1185-88 (11th Cir. 2017) (en banc) (identifying factors including (1) the debtor's level of sophistication; (2) whether and under what circumstances the debtor corrected the disclosures; (3) whether the debtor told the bankruptcy attorney about the cause of action; (4) whether the trustee or creditors were aware of the cause of action; (5) whether the debtor identified other legal claims; and (6) findings or actions by the bankruptcy court after the omission was discovered to assess whether a plaintiff's nondisclosure was

(continued...)

*Stallings*, 447 F.3d at 1048 (quoting *In re Costal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999)). The Court obviously cannot find that the Nowlings lacked knowledge of their claims. Between December 2017 and June 2018, the Nowlings wrote five letters to SN Servicing accusing it of mishandling the Nowlings' loan and threatening legal action. ECF No. 18-1 at 1–10. The letters make clear that the facts underlying the Nowlings' claims were known to them before the bankruptcy court discharged their unsecured debt on May 13, 2019.[5] Whether the nondisclosure was inadvertent therefore turns on

---

[4](...continued)
inadvertent); *Spaine v. Cmty Contacts, Inc.*, 756 F.3d 542, 547-48 (7th Cir. 2014) (knowledge of pending claim and motive to conceal are not sufficient to establish subjective intent to conceal); *Ah Quin v. Cty of Kauai Dep't of Transp.*, 733 F.3d 267, 276-77 (9th Cir. 2013) ("plaintiff's knowledge of the pending claim and the universal motive to conceal a potential asset" are not sufficient to establish a subjective intent to conceal); *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 899 (6th Cir. 2004) (judicial estoppel is improper in absence of additional evidence of fraudulent intention toward the bankruptcy court).

This Court is, of course, bound by the decisions of the Eighth Circuit, and thus this Court examines only whether the Nowlings knew of their claims and whether the Nowlings had a motive to conceal those claims. *Stallings*, 447 F.3d at 1048. But in assessing whether the Nowlings had a motive to conceal their claims, the Court takes into account both the nature of those claims and the circumstances surrounding the bankruptcy proceedings. To do otherwise would be inconsistent with the Eighth Circuit's directive that judicial estoppel should not be mechanically applied in every case in which a debtor fails to disclose a claim prior to obtaining a discharge and then later attempts to pursue that claim. *Id.* at 1049.

[5]Specifically, the Nowlings were aware of the timing and the content of SN Servicing's responses to their letters (the facts underlying Counts I-VI and IX) and of the alleged errors that SN Servicing made in calculating the amount that they still owed on
(continued...)

whether the Nowlings had a "motive" to conceal their claims. For the reasons that follow, the Court finds that the Nowlings lacked such a motive.

*First*, even if the Nowlings are successful in this lawsuit, they are likely to recover little in the way of damages. The Nowlings' primary claim is that SN Servicing violated RESPA when it failed to timely and adequately respond to their QWRs.[6] RESPA provides for actual damages, statutory damages, and attorney's fees. 12 U.S.C. § 2605(f). Actual damages are difficult to prove and typically very low. *See, e.g., Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 719 (8th Cir. 2018) (reversing lower court's award of $80 in actual damages because servicer's "failure to comply with RESPA did not cause Wirtz's alleged harm"); *Baez v. Specialized Loan Servicing, LLC*, 709 F. App'x 979, 983-84 (11th Cir. 2017) (cost of postage to send QWR and cost of paying attorney to review allegedly deficient response to QWR did not constitute actual damages under RESPA). In this case, the Nowlings seek actual damages to compensate

---

[5](...continued)
their loan (the facts underlying Counts VII-VIII).

[6]The Nowlings bring three claims under RESPA, alleging failure to respond within the statutorily prescribed amount of time (Count I) and failure to adequately respond to the Nowlings' written requests (Counts III and V). The Nowlings also assert largely parallel claims under MOSLA (Counts II, IV, VI, VIII, and IX) and a breach-of-contract claim alleging that U.S. Bank and SN Servicing violated the terms of the mortgage and note by failing to properly apply their payments, by charging fees expressly prohibited by law, and by charging fees and interest rates not permitted by contract (Count VII).

them for (1) retaining counsel to investigate SN's failure to adequately respond to the QWRs, (2) drafting and mailing subsequent QWRs, and (3) improper payment of fees and misapplication of payments, if SN Servicing has indeed erred in calculating the amount that they still owe.  ECF No. 18 ¶¶ 90, 108-09.  The Nowlings will have to overcome a number of challenges to recover these damages; for example, the cost of retaining counsel to investigate SN Servicing's alleged errors is likely not recoverable, and it is not clear how the Nowlings were damaged by any errors in calculating the amount due or how those damages could be said to result from a violation of RESPA.[7]  At first glance, the Nowlings seem to have little in the way of recoverable actual damages.

The Nowlings are also seeking statutory damages under RESPA.  Statutory damages are available when a debtor can establish that a loan servicer engaged in a pattern or practice of statutory violations.  12 U.S.C. § 2605(f)(2)(B).  Even if the Nowlings are successful in persuading the Court that SN Servicing has engaged in a pattern or practice of noncompliance—which may not be easy—their statutory damages will be limited to $2,000, and they may not be able to recover even that $2,000 unless they can first establish that they suffered actual damages.  *See Wirtz*, 886 F.3d at 719-20.

---

[7]Here, the alleged violations are failure to acknowledge receipt of a QWR within 5 days under 12 U.S.C. § 2605(e)(1)(A), failure to adequately respond to a QWR within 30 days under § 2605(e)(2), and failure to comply with the requirements of 12 C.F.R. § 1024.36.

There are, of course, exceptional cases in which RESPA plaintiffs have recovered significant damages. But the Nowlings have a mine-run case; nothing about their case suggests that it is likely to result in a large award of damages.[8] It is highly improbable that the Nowlings would intentionally conceal such a low-value asset from the bankruptcy court.

By contrast, many of the Eighth Circuit cases applying judicial estoppel to bar claims not disclosed in earlier bankruptcy proceedings involve employment-discrimination claims. *See, e.g., Van Horn*, 812 F.3d 1180 (barring claims alleging race

---

[8]The amended complaint makes passing reference to "emotional distress damages" suffered "as a result of SN Servicing's failure to comply with RESPA and MOSLA." ECF No. 18 ¶ 68. The factual basis for such damages is not apparent from the record, and the Court doubts that the Nowlings gave this serious consideration in assessing the value of their claims.

The Nowlings' remaining claims alleging breach of contract and violations of MOSLA appear no more lucrative than their RESPA claims. Almost all of the Nowlings' MOSLA claims rely on the statute's "piggyback" provision, which forbids a servicer from violating "a federal law regulating residential mortgage loans.'" Minn. Stat. § 58.13, subd. 1(a)(8). Statutory damages available under MOSLA are "equal to the amount of all lender fees included in the amount of the principal residential mortgage loan." Minn. Stat. § 58.18, subd. 1(2). These amounts are generally not very large. *See, e.g., Wirtz v. JPMorgan Chase Bank, N.A.*, No. 15-CV-2286 (DSD/KMM), 2016 WL 5402742, at *2 (D. Minn. Sept. 26, 2016) (awarding $2,137.22 in statutory damages under MOSLA), *rev'd and remanded sub nom. Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713 (8th Cir. 2018). As to the Nowlings' breach-of-contract claim, the Nowlings assert that they have been damaged in the form of "amounts overpaid, and amounts currently overstated as balance remaining." ECF No. 18 ¶ 140. Even if the Nowlings succeed on this claim, the most likely result will be that the Court will order SN Servicing to correct its records. This, too, does not appear to be a high-dollar claim.

and sex discrimination by employer); *Jones*, 811 F.3d 1030 (barring claims alleging race discrimination by employer); *Stallings*, 447 F.3d 1041 (barring claims against employer for interference and retaliation under the Family and Medical Leave Act). A debtor will generally have a stronger financial incentive to hide an employment-discrimination claim than a RESPA claim. Unlike successful RESPA claims, successful employment-discrimination claims often result in six-figure and occasionally even seven-figure damage awards. *See, e.g., Bryant v. Jeffrey Sand Co.*, 919 F.3d 520 (8th Cir. 2019) (upholding $250,000 in punitive damages in employment-discrimination case); *Miller v. Bd. of Regents of Univ. of Minn.*, 402 F. Supp. 3d 568, 575 (D. Minn. 2019) (jury in employment-discrimination case awarded plaintiff $744,832 in back pay and benefits, $3 million in other past damages, and $461,278 in front pay and benefits).

*Second*, the Nowlings point out that even if they *had* timely disclosed their claims to the bankruptcy court, some or all of their recovery would have been exempted from the bankruptcy estate under 11 U.S.C. § 522(d)(5). The Bankruptcy Code allows debtors to exempt various types of property from the bankruptcy estate, up to a maximum value for each type of property. *See* 11 U.S.C. § 522(d). Section 522(d)(5), commonly known as the "wildcard" exemption, allows debtors to exempt any kind of property up to a value of $1,225, plus up to $11,500 of any unused portion of the homestead

-17-

exemption, for a total of $12,725.⁹ The Nowlings used only $1,688 of the wildcard

exemption on various other property, leaving $11,037 to apply to any recovery on their

claims against U.S. Bank and SN Servicing.¹⁰  *See* ECF No. 28-1 at 90-91.  Given that the

Nowlings are not likely to recover more than $11,037 in this lawsuit—and given that

any recovery up to $11,037 could have been exempted from their estate under the

wildcard exemption—the Nowlings would have had very little financial incentive to

hide their claims.

*Finally*, when the Nowlings belatedly notified the bankruptcy trustee of their

claims, the bankruptcy trustee appeared to have no interest in trying to make the

proceeds from those claims available to the Nowlings' unsecured creditors.  On July 29,

2019, the Nowlings' attorney contacted the attorney for the Chapter 13 trustee to

---

⁹The amounts that debtors may exempt are adjusted every three years to reflect changes in the Consumer Price Index.  *See* 11 U.S.C. § 104(a).  The amounts cited by the Court applied when the Nowlings filed for bankruptcy on March 11, 2014.  *See* 11 U.S.C. § 104(c) (adjusted dollar amounts do not apply to cases commenced before the date of the adjustment).

The "homestead" exemption under 11 U.S.C. § 552(d)(1) allowed the Nowlings to exempt up to $22,975.  The Nowlings claimed only one dollar of the homestead exemption.  ECF No. 18-1 at 22; ECF No. 28-1 at 90.  As a result, $11,500 of the unused homestead exemption was available to them under the wildcard exemption.

¹⁰Indeed, when the Nowlings amended their bankruptcy schedules to include their RESPA claims as assets on Schedule B, the Nowlings identified the claims as exempted property under § 522(d)(5).  ECF No. 18-1 at 24.  The Nowlings calculated their remaining wildcard exemption as $23,762.00, but, as described above, the Court calculates the remaining exemption as $11,037.

-18-

confirm receipt of the amendments and to inquire as to whether the trustee intended to move to require the Nowlings to pay the proceeds of any claims into the estate. ECF No. 18 ¶ 80. The Chapter 13 trustee took no action with respect to the Nowlings' claims. *Id.* at ¶ 81. Of course, at the time that the Nowlings amended their Schedule B, the discharge order had been entered and the proceedings were about to close.[11] But if the Chapter 13 trustee thought that the claims had any real value, he undoubtedly would have taken action to ensure that any proceeds from the claims be made available to the unsecured creditors. Most likely, the Chapter 13 trustee recognized that any recovery was likely to be small and to fall within the wildcard exemption.

For these reasons, the Court credits the Nowlings' statements that their nondisclosure was simply an oversight. ECF No. 18 ¶¶ 75-77. Judicial estoppel is a harsh remedy and should be applied "both narrowly and cautiously." *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1227 (10th Cir. 2011). Given that the Nowlings' failure to disclose their claims to the bankruptcy court was almost certainly inadvertent, and given that the Nowlings' omission did not impose any kind of detriment on U.S. Bank or SN Servicing, the Court declines to exercise its discretion to judicially estop the Nowlings from asserting their claims in this lawsuit.

---

[11]The Nowlings contacted counsel for the Chapter 13 Trustee on July 29, 2019. ECF No. 18 ¶ 80. Proceedings were closed on August 12, 2019. *Id.* ¶ 82.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendants' motion to dismiss [ECF No. 24] is

DENIED.

Dated:  March 16, 2020   s/Patrick J. Schiltz
  Patrick J. Schiltz
  United States District Judge